# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NICHOLAS NAVARROLI, on behalf of himself and the class members described below, ) ) ) ) Plaintiff, ) ) v. ) ) MIDLAND FUNDING LLC; ) MIDLAND CREDIT MANAGEMENT, INC.; ) and ENCORE CAPITAL GROUP, INC., ) ) Defendants. ) | No. 18 C 2047 Judge Sara L. Ellis |

## OPINION AND ORDER

After Plaintiff Nicholas Navarroli received a letter from Defendants Midland Funding LLC, Midland Credit Management, Inc. ("MCM"), and Encore Capital Group, Inc. informing him of an offer to settle an alleged consumer debt that failed to mention that any settlement payment would restart the statute of limitations for the collection of a legally unenforceable debt, Navarroli sued Defendants bringing class action claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., alleging that MCM's form letter fails to provide necessary disclosures and contains false, deceptive, or misleading representations in violation of 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(10). Defendants move to dismiss Plaintiff's complaint for lack of standing. The Court finds that the informational injury alleged in Plaintiff's complaint suffices to confer standing in this case and denies Defendants' motion to dismiss.

# BACKGROUND[1]

In late February 2018, Navarroli received a letter from Defendants, sent by MCM, that offered settlement of an alleged consumer debt. The letter read "Congratulations! You have been pre-approved for a discount program designed to save you money. Act now to maximize your savings and put this debt behind you. . . ." Doc. 1, Ex. A. The letter offered three payment options. The first option invited a one-time payment of 60% of the alleged debt, with a due date of March 30, 2018. The second option directed Navarroli to make a monthly payment for six months in an amount that would total 80% of the alleged debt, with a due date of March 30, 2018 for the first monthly payment. The final option detailed a monthly payment plan as low as $50 a month. Separate from the payment options, the letter also listed its offer expiration date of March 30, 2018. The post-script of the letter reads, in its entirety: "The law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau." *Id.* The letter did not disclose that making a payment could restart the statute of limitations and revive an otherwise legally unenforceable debt.

Navarroli claims that this failure to disclose is a concrete informational injury, which violates the FDCPA and suffices to confer Article III standing. Defendants disagree and filed the present motion to dismiss.

---

[1] The facts in the background section are taken from Navarroli's complaint and are presumed true for the purpose of resolving Defendants' motion to dismiss [23]. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). This section additionally includes other facts submitted by Navarroli in his response to the motion to dismiss to the extent they are consistent with the allegations of the complaint. *Help at Home, Inc. v. Med. Capital, LLC*, 260 F.3d 748, 752–53 (7th Cir. 2001). Finally, the Court also considers the facts contained in the exhibit filed with the complaint. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction has the burden of proof. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *See id.*; *United Phosphorus*, 322 F.3d at 946. If, however, the defendant denies or controverts the truth of the jurisdictional allegations (a factual challenge), the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established jurisdiction by a preponderance of the evidence. *See Apex Digital*, 572 F.3d at 443–44; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006).

**ANALYSIS**

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, --- U.S. ----, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997)). "Standing to sue is an important component of that limitation." *Meyers v. Nicolet Rest. of DePere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). As a prerequisite, standing "ensures that

courts do not decide abstract principles of law but rather concrete cases or controversies." *Id.* (quoting *Sierra Club v. Marita*, 46 F.3d 606, 613 (7th Cir. 1995)). Thus, "[s]tanding is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Id.* (quoting *Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988)). Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan*, 504 U.S. at 560–61). The motion before the Court focuses solely on the injury in fact requirement.

The injury in fact need not be tangible. *Spokeo*, 136 S. Ct. at 1549. Courts look to both legislative history and congressional judgment when determining whether an intangible injury can confer standing. *Id*. ("[B]ecause Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important"). "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* In other words, a bare violation of a statute in which Congress included a private right of action does not necessarily create an injury in fact; the plaintiff must still allege a particularized injury. *See Meyers*, 843 F.3d at 727. The Supreme Court has recognized an "informational injury" as a particularized injury in fact sufficient to confer standing. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982) (holding that individuals acting as "testers" who posed as renters or purchasers but never intended to rent or buy had standing to sue under the Fair Housing Act after their right to truthful information was violated).

4

Navarroli alleges that MCM engaged in misconduct in violation of the FDCPA when MCM sent him a dunning letter on an expired consumer debt that contained incomplete and therefore misleading information. This Court adds its voice to the growing chorus within this district that has found standing in exactly this type of case. *See*, *e.g.*, *Pierre v. Midland Credit Management, Inc.*, No. 16 C 2895, 2017 WL 1427070, at *3–4 (N.D. Ill. Apr. 21, 2017) (finding plaintiff suffered injury in fact after MCM sent her "a misleading dunning letter that sought payment on a time-barred debt and lacked disclosures to which she was legally entitled" because "[s]uch an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivations of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury'") (quoting *Saenz v. Buckeye Check Cashing of Ill.*, 2016 WL 5080747, at *1–2 (N.D. Ill. Sept. 20, 2016)); *Haddad v. Midland Funding, LLC*, 255 F. Supp. 3d 735, 743 (N.D. Ill. 2017) (finding plaintiff suffered injury in fact after Midland sent plaintiff dunning letter on expired debt); *Wheeler v. Midland Funding, LLC*, No. 15 C 11152, 2017 WL 3235683, at *5 (N.D. Ill. July 31, 2017) (finding plaintiff suffered injury in fact after Midland directed plaintiff to website that contained half-information about plaintiff's expired debt and failed to disclose that statute of limitations could be renewed if plaintiff began making payments); *Francisco v. Midland Funding, LLC*, No. 17 C 6872, 2019 WL 498936, at *3–4 (N.D. Ill. Feb. 8, 2019) (finding Midland's failure to report status of debt as disputed gave plaintiff standing); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (finding that receiving debt collection letter that wrongly assesses percentage-based collection fee on delinquent consumer debt constitutes concrete injury). These cases have found consistently and repeatedly that informational injuries like—and in some cases exactly the same as—the injury Navarroli alleges arising under the

FDCPA are sufficient to confer standing. Furthermore, these cases are "consistent with established Seventh Circuit precedent regarding the FDCPA, which does not require proof of actual damages as a precursor to the recovery of statutory damages and when looking at standing focuses on the debt collector's misconduct, not whether the debt is valid or, as here, whether the consumer has paid an invalid debt." *Wheeler*, 2017 WL 3235683, at *4 (quoting *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998)) (internal quotation marks omitted).

The very nature and purpose of MCM's letter seems to be to bait the consumer into paying money on a time-barred debt, either by settling for sixty cents on the dollar—a percentage that is orders of magnitude higher than what Defendants allegedly paid to obtain the outdated debt—or by unwittingly renewing the statute of limitations by making a new payment on the debt. The Seventh Circuit has found that such dunning letters pose a serious danger: "We begin with the danger that a debtor who accepts the offered terms of settlement will, by doing so, waive his otherwise absolute defense under the statute of limitations. Only the rarest consumer-debtor will recognize this danger." *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 684 (7th Cir. 2017). The alleged injury is clear: Navarroli received a letter encouraging him to "put [his] debt behind [him]"—a debt for which he already had a complete defense under the statute of limitations—by selecting one of MCM's proposed payment options, while omitting the crucial information that payment would renew the statute of limitations period and eschew this complete defense. Doc. 1, Ex. A. This is certainly within the realm of conduct Congress intended to deter with the FDCPA. *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1021 (7th Cir. 2014) (finding that dunning letters offering settlement of expired debt could lead consumers to believe that debt was legally enforceable violated FDCPA); *see also Wheeler*, 2017 WL 3235683, at *4; *Pierre*, 2017 WL 1427070, at *4; *Bernal*, 318 F.R.D. at 72. That Navarroli did

6

not actually pay is not relevant for standing under the FDCPA; MCM's alleged misconduct suffices to create a concrete injury in fact with regard to Navarroli. *Keele*, 149 F.3d at 593.

Defendants insist, however, that Navarroli has alleged only a bare statutory violation, without identifying a particularized injury in fact. They compare the case to a bevy of recent Seventh Circuit cases denying standing for lack of concrete injury. Doc. 23 at 5 (citing *Meyers*, 843 F.3d at 724; *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909 (7th Cir. 2017); *Groshek v. Time Warner Cable*, 865 F.3d 884 (7th Cir. 2017); *Collier v. SP Plus Corp.*, 889 F.3d 894 (7th Cir. 2018)). Each case, however, is clearly distinguishable.

The plaintiff in *Meyers* brought his case against Nicolet Restaurant under the Fair and Accurate Credit Transactions Act ("FACTA") claiming that the restaurant's failure to truncate the expiration date of his credit card on his receipt was a statutory violation. *Meyers*, 843 F.3d at 725. The Seventh Circuit found that Meyers had not suffered any harm, and that his alleged injury was not caused by the type of conduct Congress sought to deter with FACTA, which was aimed primarily at identity theft. In fact, Congress "specifically declared that failure to truncate a card's expiration date, without more, does not heighten the risk of identity theft." *Id.* at 727. By contrast, MCM's dunning letter significantly heightens the risk of financial injury to recipients of the letter who could unwittingly pay on a time-barred debt and renew the statute of limitations period.

In *Gubala*, the plaintiff brought his case against Time Warner after they failed to destroy his personal information, which the plaintiff alleged was a violation of the Cable Communications Policy Act. *Gubala*, 846 F.3d at 909. The Seventh Circuit affirmed that Gubala had "not alleged any plausible (even if attenuated) risk of harm to himself from such a violation [or] any risk substantial enough to be deemed 'concrete.'" *Id.* Additionally, the

Seventh Circuit found that Gubala had "neglect[ed] to mention that the duty of a cable provider to destroy a subscriber's personal information is qualified by [subsections of the Act], which authorized disclosure of such information" in certain circumstances. *Id.* at 913. Thus, like *Meyers*, and unlike Navarroli's case, not only did Gubala not allege a personal injury, the alleged statutory violation was not the type of conduct that Congress sought to deter.

In *Groshek* and *Collier*, the same pattern repeats. *Groshek*, 865 F.3d at 884 (finding that defendant's disclosure form that contained extraneous information did not cause a particular injury to Groshek); *Collier*, 889 F.3d at 894 (finding that receipts containing a debit or credit card's expiration date did not cause particularized injury and merely alleging "actual injuries" did not suffice to confer standing either). Although all of these cases stand for the proposition that a court cannot find standing where the plaintiff does not allege more than a bare statutory violation, they are inapposite. In contrast, *Pantoja*, *Keele*, and *McMahon* directly address the issue before the court and indicate that Navarroli's allegations are sufficient to confer standing. Defendants have not distinguished them.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion to dismiss [23].

Dated: March 5, 2019

SARA L. ELLIS
United States District Judge